If it would please the court. Petitioner's argument is organized into three parts. Firstly, petitioner's last removal hearing violated BIA precedent, matter of Patel, as recently acknowledged in this court's decision for Ananas v. Holder, which holds that remand before an immigration accord affords opportunity to produce new and previously unavailable evidence. Secondly, during remanded proceedings, petitioner's last admission as an asylee should have been subject to an evidentiary hearing as consistent with this court's decision in Sum v. Holder. Instead, the petitioner was ordered removed, and the BIA premised upon government counsel's substantiated allegations of fraud during remanded proceedings concluded fraud with evidence of no fraudulent intent. And finally, as petitioner has been subject to delays for no fault of his own, due to conflict of laws before this court, the long overturning Melina Camacho, petitioner's asylum application is presently before this court presenting a record that warranted oral argument in 2005, and petitioner respectfully requests to be so treated. Firstly, an immigration judge has authority to consider new evidence and previously unavailable evidence on remand if it would support a motion to reopen proceedings. Remand is limited only when the BIA expressly retains jurisdiction for itself, and remand is expressed solely for a limited purpose. Let me ask you, this is a very unusual circumstance with Melina Camacho. And that was, we found ourselves in a very difficult situation statutory bind in terms of the BIA's authority. So basically said that the actual removal order had to come from the IJ. Here, the BIA basically said that it's sending it back. They had sent it back for Melina Camacho. That was the only reason. So why shouldn't we leave it at that? I mean, that was the reason it went back, correct? It went back, but the board's order was pursuant to Melina Camacho. Correct. And pursuant is in furtherance of all other proceedings. Well, but that's. That hell exists, nonetheless. Yeah, I mean, that's kind of a far-fetched pursuant to. The only reason it went back was that Melina Camacho had intervened, and the board no longer could just, you know, issue both the, you know, the denial and the removal order contiguously. Yet this Court's finding in Fernandez found Patel to be the rule whereby any remand is for any purpose that would warrant a motion to reopen with new and previously unavailable evidence under the two conditions stated. And this Court found that unless the board issues additional precedent, that will be the law. With that in mind, remand should have been available to new and previously unavailable evidence. And that's consistent with an analysis pursuant to some V. Holder, where a petitioner is admitted to the United States as a refugee pursuant to H.C.F.R. 223.3, small d, to small ruminomeral I, and they have him examined as to his admissibility under the Act through a procedurally regular admission with a refugee document. What's that have to do with the scope of the remand? Because any grounds of inadmissibility would be sent to an immigration of court, would be referred to immigration of court, no to the testis grounds of inadmissibility. So let me just get this straight on your second point, though. Your client goes to the BIA. The BIA says asylum denied. Your client then requests a travel document, correct? Correct. And on the travel document, he checks that he's not in proceedings and checks that he's an SIL, correct? Contrary, Your Honor. He checks that he's an SIL, but he also attaches an immigration judge's order. So that puts the government on notice. Yes, the immigration judge's order that had been overturned by the BIA. Correct. Okay. So leaving aside whether that was fraudulent to attach and say he was an SIL when his case had been overturned by the BIA, the next question comes is that he claims he left the country, correct? Correct. Okay. I understand. Where did he go? The record doesn't show, Your Honor. Whether he went to Beirut or France? The record doesn't really clearly show. No, but the only thing in the record is his itinerary, which shows him going to Beirut, correct? There's an itinerary that's in there, and there's also a government U.S. visit worksheet to demonstrate the availability of a broad database. I don't know if it specifically refers to him because it's blacked out. But it demonstrates that the government has all the information at its disposal to determine whether or not he's in proceedings. They adjudicated his admission, and instead of referring them to removal proceedings, they just let him in as a refugee. Well, I guess the government doesn't necessarily agree with you that he left. I don't know. That's an evidentiary question we can't resolve, right? That's why we need a hearing before an immigration court. So if we agreed with your first argument that the remand wasn't limited, then this would go back to an immigration court, correct? Correct, Your Honor. And if he went to – if he had gone to Beirut, he then would be ineligible for asylum. Not necessarily. There could be extenuating circumstances like death of a family member or other.    So there's a lot of compelling humanitarian needs which would require evidence of return in hiding before leaving the country again. And he didn't put any of that before the – There was never a chance on remand, Your Honor. Because they said there was no jurisdiction. Exactly. The judge just ordered him removed. Okay. Can I proceed? Sure. Thank you. Well, I think that covers both Fernandez and Sum – Summararily. But an important matter before this Court is the Petitioner's regional asylum claim, which was overturned by the Board – his grant was overturned by the Board in a decision that just defies logic. He gave a specific credible testimony corroborated by specific evidence. None of whom were – were disputed as being credible within removal proceedings itself. The government attorney was inclined to provide – to grant him withholding of removal premised upon compelling objective evidence that the Syrian army is dominated – which dominates the Lebanese army was arresting people, holding them incommunicado, and under – without access to counsel, and under terms that would leave them vulnerable to torture as determined by Amnesty International and in violation of both Lebanese criminal law and the International Covenant on Civil Political Rights. And more than that – Could I – could I just ask you as a procedural matter, if – this went to the Ninth Circuit and it came back only because of Molino Camacho, so his – the merits have never been reviewed, correct? Never. Okay, so – Unless we're presenting the case that should have been reviewed then. Okay. But if – if because of sort of these procedural path that this case has taken, if it were to go back and if the – if the – if the IJ said it didn't have jurisdiction other than to issue an order of removal, that order of removal would be premised on the prior decision, correct? Would be premised upon the court's reading on Molino Camacho and the prior decision, which is right now before this Court. Okay. Yes. Okay. Can I proceed? Well, I'm just saying that then would that normally, if they – if that then is the order of removal, is this in effect the only appeal or would it have to go back and then come back up here again for the merits? This Court can grant asylum premised upon its reading that the board's initial holding was simply erroneous. And they could grant asylum with the understanding that the procedural irregularity, the basically unlawful admission, if you will, could be forgiven, could be taken as a negligible point of negative discretion. You think we could do that? Yes, you can. I don't think we can. Tell me the best case possible for us to make that determination when it hasn't been made by the agency. Well, matter of PULA has long – let's concede there's been a procedural irregularity. Let's even concede that there's some fraud, although we're not going to do that here. But matter of PULA, matter of SLEEM showed that fraud in relation to admission in the asylum claim in order to escape a country of persecution is a negative point of discretion, but it isn't necessarily going to kill the claim. In this case, the person had left the United States. We're going to insist – Again, he knows where he went, right? He knows where he went. And what's the evidence of where he went? There is none yet. He could have put that in, could he not? Well, he didn't get the chance because the judge ordered him removed. His counsel attempted to – inquired of the judge, is there any relief that you find that this respondent can present before the court? And she said, I'm just going to order him removed. It's on the record. But where did the – where does the Lufthansa itinerary come from? Didn't that come from him putting that in the record? That came when he was unrepresented and people who were with him as family members, to my understanding, put that in the record. I see. Okay. I'm not in a position necessarily to state that on the record any more than the government is in a position to conclude fraud. That's an evidentiary hearing. Do you want to save the remaining time for rebuttal? You have three seconds. Thank you. May it please the Court. I'm Manning Evans. I represent the government in this matter. Could I just ask you a question at the beginning? Yes, Your Honor. In the Shalala case versus INS, this Court found that to deport and overstay, the INS must convince the immigration judge by clear and convincing evidence that the alien was not the alien. In the Shalala case versus INS, it was admitted as a nonimmigrant for a specific period that the period had elapsed and the alien is still in the country. Why wasn't Mahana an arriving alien rather than an overstay subject to deportation when he allegedly returned to the United States January 10th, 2006? These proceedings concern his arrival in 1996 and that he was charged as an overstay then, and he admitted that charge and conceded removability at that time. The question that Mr. Mahana is now trying to raise is whether or not he should actually have been charged anew based on his return. But the government's position is that these proceedings have always concerned the original charge, and he should not be able to receive from his admission based on a claim that he left and came back again. You could have probably solved all of this if you had issued another NTA, correct? I think that's absolutely correct, Your Honor. It probably would have been the better course of action, but it doesn't matter at this time. That new NTA would have charged him as being removable for being inadmissible at the time that he offered an invalid travel document. When he did that, he was actually admitted, so he's not an arriving alien, assuming that all of that happened. Well, so here's the question I have. He's never really gotten an appeal on the merits of his first BIA, IJ hearing, which asylum was granted and then the BIA said no. So he never got a hearing on the merits, correct? He never, by hearing I assume you mean a petition for review. No, he never, yeah, he's never had a Ninth Circuit hearing on that. That's right, and we understand this proceeding to include that. But I think the way to look at it is that the court, this Court, held the first final order of removal issued when the BIA reversed the grant of asylum as not a final order because it wasn't valid. So the first final order in this case was the last board decision, and that would bring up everything that had happened in the proceedings before, including the board's denial of asylum. So we don't dispute that. So at some point he gets that hearing, and as he says, the time is now. How does his reentry factor in? How would he get a hearing on whether or not that in effect put him in the situation of the sum case, which means that even though it might not have been technically legal, he was admitted, you know, as if he were legal? How would that get heard? In what context? Would we send it back from here, as he says, to give another hearing on that? Well, he apparently was trying to raise that issue when the board remanded the case based on Molina Camacho. Right. And the IJ read the board's remand as very narrow and said, no, I don't have jurisdiction to do that. Whether that was right or wrong, we don't believe it matters, because the board addressed every issue that Mr. Mahana was trying to raise at that time in his motion to terminate. He never offered that he wanted to testify. He never offered a declaration. There was no reason to hold a hearing. And so the board could easily address everything in the motion to terminate, which was before it, and it did. And it said, this doesn't change anything. We're holding you to your original admission of removability. And that's perfectly fair in this case, especially based on the fact that Mr. Mahana really did not offer everything that he could have in support of a motion to withdraw his admission of removability. That's really what he should have been trying to do. And he never did that. He moved to terminate instead. He moved to terminate so that the government would have to bring new charges, and presumably he would apply for asylum in those proceedings again, and we would hear all the same testimony again, and we would be back here long after the NTA in this case originally issued in 1997. So, really, there's no point served by worrying, by focusing on whether or not he left the country and came back. I think the government's brief shows why that shouldn't matter in this case. The Board said it didn't matter based on his fraud, and the Board has expertise in this area which we believe that the Court should defer to. There's nothing that compels a contrary conclusion. And granted, this is a legal issue, but the Board's expertise in the area and the absence of clear law on the matter, I think, would allow this Court to say the Board got it right to hold him to his original admission of removability. Where does it say fraud? That's the Board's last order, I believe, Your Honor, and I don't have the AR. It would probably be AR3. Could you just give me the date of that? That's September 12, 2006, right in the middle of the paragraph referring to Respondent's subsequent fraud in obtaining a refugee travel document. And as the Court said in a footnote, it actually doesn't matter whether or not he intentionally defrauded the government in obtaining that document. It's enough that he misrepresented, possibly innocently, in saying that he had asylum status when he applied for that document. But that's enough to render that document invalid. So whether he's removable for overstaying his admission some 13 years ago, or he's going back on an invalid travel document, either way he's removable. And undoubtedly, we would get to the same asylum questions we have here. Now, with respect to the Sum case, I would have to say that I think that the situation is so dramatically different that involved an alien seeking a waiver of inadmissibility in order to be able to adjust his status or actually readjust because he was already in LPR. If the Court thinks that's relevant, I think it would probably be appropriate to submit something on that. And I see my opposing counsel has submitted a 28-J today, and I'll respond to that if the Court thinks it's necessary. But the Sum case does touch on some equitable matters, holding that the alien should not be able to shed a skin that he benefited from for years. And in a way, Mr. Mahan is in the same situation. He benefited for years by being an alien in removal proceedings, where he long ago admitted his removability. So to allow him now to say that he's actually removable on some other ground really ignores the fact that he benefited for 13 years based on his original concession of removability, which allowed him to pursue a claim for asylum. So if your position is that the BIA has already ruled on this reentry issue. Yes, Your Honor. And that he got to put in any evidence he needed or wanted to put in. Well, I think the BIA looked at what he presented and said this doesn't change anything. And I don't believe that he's ever offered any indication that he wanted to present more than what was in the motion to terminate. Now, the BIA, somewhere in the government's brief, if I recall, you even disputed whether he left the country. Well, I simply pointed out. I don't mean you, but I mean the government. Yes, Your Honor. So we have, though, this I-94, illegible as it is, stamped in 2006, I guess it is. It's possible, Your Honor, that he would establish that if there was a hearing and the IJ would probably find that. He might even admit it. The government would probably accept the admission. I'm not sure. My point is simply that it wasn't established as a matter of fact. I think that the board didn't detail exactly why it said it doesn't matter in this case. But I think what he's saying is, well, let me have a hearing on that point. Yes. I understand, Your Honor. And the government's response is it doesn't matter because it wouldn't make any difference. And actually, he never really offered he never did offer what he would testify to at a hearing. He never offered a declaration on what happened. All we have is his attorney's description of what happens, which is not evidence. Suppose the motion to terminate was construed as a motion to reopen and then the and presented as such, the board could have then considered why he wanted to reopen and what evidence he had to present, what new evidence or whatever. So what would be wrong with a remand to permit the board to consider that motion to terminate as a motion to reopen? Well, Your Honor, I think that it would serve no purpose. The board has addressed the issues that he's tried to raise, and they conclude that he committed fraud. And whether or not he then proceeded to leave the country and come back apparently didn't matter to the board. Yeah. And I think that's a reasonable conclusion of the board under these circumstances, where somebody's been here 13 years and now their asylum claim, frankly, is going south. It's, we think, a very poor claim. This fellow has not shown that anyone in his situation was harmed as he claims he would be if he had to go back. It's just, there is no evidence that compels a conclusion contrary to the board's that he faces future persecution. And there is no claim of past persecution on which he could base a presumption. So he really has a very poor case of asylum, which is why he's now making a fuss over removability. But the government can't. I mean, this is a classic case where had the government put in a new NTA, we wouldn't be in this situation. Had Petitioner put in his evidence that we're talking about, it doesn't, it's missing. Like, did he go and where did he go and when did he come back? We wouldn't be in this situation. So here we are. And with that, I think your time has expired. And I will give you one minute for a rebuttal for. Your Honor, might I just respond to one point? No. I think we're done. Thank you very much, Your Honor. I appreciate your concern. And just an observation, you know, the, a lot of this is in control of the counsel and then it gets up here and we're always trying to figure out where are the missing pieces? But it's not really our job, unfortunately, you know, to supply the missing pieces. So we take the record as we find it. So with that, let's just hear from Mr. Mahana's counsel briefly. Any motion needs to be supported by prima facie evidence, not conclusive evidence. And I would think that an I-94 concerning admission as a refugee would be prima facie evidence. Respondent's counsel chose to leave remaining an evidentiary hearing for conclusive evidence. Still, when we're talking, the government, on the other hand, has not had any opportunity to conclude fraud premised upon the evidence. We're left with both sides of the coin in the manner in which the procedural irregularities transpired in the petitioner coming back to the United States with a refugee document. Let me just ask you about that. I'm referring back again to the letter for the board where it says, dated, excuse me, September 12, 2006. The order of removal is validly based on the respondent's factual admissions and concessions to the charges lodged in the notice to appear. The respondent's subsequent fraud in obtaining a refugee travel document more than two years after his grant of asylum was reversed by the board does not initiate the original charges against him. Well, we take the position in this court today that there's no evidence of the necessary scientor to constitute fraud. Whether or not the order, the board's order alleging, excuse me, the board's order vacating its prior order, whether or not the vacating the prior order also restored asylum, we're not going to put before this court at this time. What is true is that this petitioner, a non-attorney, was filling out a form without an attorney, without the knowledge of counsel, and made a lot of mistakes. The government is calling these mistakes lies, and we're contesting that. Well, doesn't it seem a little perverse to you, perhaps not, that this gentleman is order deported, in effect, by the BIA, and all that needs to occur after that is the order of removal, and that he now says, well, after that all happened, I came and left the country, therefore I should be able to stay in the country and, what, have a whole new proceeding that would duplicate the first? Not given the law, in effect, promulgated by the board, which the Ninth Circuit was well aware of, that being that board's remand is open unless the board expressly retains jurisdiction and states that the purpose of the remand is exclusive and solely for a limited purpose. And without that, the immigration court is not limited to a particular purpose, but it can include that purpose and all others. This Court knows that. I think we have your argument well in mind. They know that. We have your argument in mind. I've given you an extra three minutes already. So will the rest of you please watch the clock? I think for some reason people don't seem to understand. When it's red, the clock keeps going. But that just means you're more in the hole. And we try to be a little bit flexible, as we have with both counsel here, letting them go beyond. The case just argued. Mahana v. Holder is submitted.
judges: Nelson D. W., Thompson, McKeown